Filed 6/17/14  Vafai v. Weisman CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MAHSHID VAFAI, | D064014 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. DV036633) |
| WAYNE WEISSMAN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Gerald C.

Jessop, Judge.  Affirmed.

Dunne & Dunne and Anthony J. Dunne for Defendant and Appellant.

DLA Piper, Timothy S. Blackford, Courtney M. Vasquez; Family Violence

Appellate Project, Erin C. Smith, Nancy K.D. Lemon, Jennafer Dorfman Wagner, Jessica

Weinberg and Howard Schneck for Plaintiff and Respondent.

The trial court granted Mahshid Vafai's request for, and issued, a permanent

domestic violence restraining order against Wayne Weissman pursuant to the Domestic

Violence Protection Act (DVPA) (Fam. Code, § 6200 et seq.).[1] Weissman appeals that order, contending the trial court erred because the evidence was insufficient to support a finding he disturbed the peace of Vafai within the meaning of section 6320. Based on our review of the record, we conclude the trial court did not abuse its discretion by granting Vafai's request and issuing the restraining order against Weissman.

FACTUAL AND PROCEDURAL BACKGROUND

In January 2010, Vafai and Weissman began a dating relationship. In November 2011, Vafai moved in with Weissman. A few months later, he started to push, shake, and scream at her. He threw a pocket knife at her and raised his hands as if he was going to strike her. Vafai was afraid of him.

In May 2012, Vafai moved out of Weissman's home and ended their relationship. In September, he called her and told her he put a gun to his head and wanted to kill himself. He stated he was depressed that he did not have her in his life anymore. Vafai contacted Weissman's son and told him about his suicidal ideation. Weissman was angry when he learned she had done so. He retaliated by calling her mother and telling her disturbing information about Vafai.

In October 2012, Weissman went to Vafai's apartment. After she told him that she would not go back to him, he began cursing and yelling. He gestured as if he wanted to hit her. When he demanded the return of a television he had given her, she gave it to him. As he was leaving the apartment, he threw it at her and slammed the door behind

---

[1] All statutory references are to the Family Code unless otherwise specified.

him. Since then, he has returned to her apartment, unannounced, at least three times and placed items that belonged to her by her front door.

In November 2012, Weissman filed a small claims action against Vafai, alleging she owed him the sum of $11,000 for money he had loaned to her to renovate her rental property. The parties agreed to have, and had, the matter heard during a television show presided by "Judge Judy," who apparently found Vafai did not owe Weissman any money.

Vafai apparently filed an initial petition for a restraining order against Weissman, which was denied by San Diego County Superior Court Judge Christine Goldsmith on or about December 17, 2012, after Weissman represented to the court that he would no longer contact Vafai. However, Weissman contacted Vafai on many occasions thereafter.

On December 28, 2012, Weissman sent Vafai an e-mail stating that "it is my greatest wish for you . . . that justice will eventually prevail and your future, and the future of the people you love, will be filled with misery, sickness and tragedy. . . . This is exactly what you deserve and no doubt what justice will eventually hand out to you. You sold your soul to the devil for $9,000!" He concluded: "So enjoy the $9,000 you stole from me, but realize that until you set things right, you and your family will be doomed to the curse of the consequences of your actions. Not a single person that I know who also knows you has any respect for you as a human being. Rot in hell Mahshid Vafai." On January 5 and 8, 2013, Weissman sent her additional e-mails.

On January 31, 2013, Weissman sent Vafai an e-mail referring to past incidents and stating she was "a fucking Iranian dishonest bitch who lies, cheats and steals from anyone without remorse as long [as] it benefits her." He concluded: "You are a cocksucking lowlife and I am sorry that you did not pull your shit in Iran. There they would have cut off your worthless head in a public execution and fed it to the rats. I would love to see that happen to you! If you were an honorable person (which you certainly are not), you would return what you stole from me and get me out of your miserable worthless life as quickly as possible. But you are a fucking scumbag and have no idea what being honorable is about." On February 16, Weissman sent her a letter and on February 28 sent her another e-mail. On March 5, he sent her a message on her Facebook page.

On or about March 14, after Vafai apparently sent an e-mail to Weissman's children and a police detective about the Judge Judy television episode, Weissman sent an e-mail to her expressing his anger for doing so and stating, "You are a worthless piece of shit, Mahshid!"

On or about March 14, Vafai filed the instant request for a domestic violence restraining order. She included a summary of the above events involving Weissman and attached copies of his e-mails to her dated December 28, 2012, January 31, 2013, and February 28, 2013. She asserted that during their relationship Weissman was emotionally, verbally, and physically abusive toward her, and since their relationship

4

ended, he had continuously harassed her. She asserted she was extremely scared for her well-being. Weissman filed a response to her request generally disputing her allegations.

On March 25, 2013, the trial court (San Diego County Superior Court Judge Gerald C. Jessop) held a hearing on Vafai's request. The court stated that it had read both parties' papers and then both parties affirmed under oath they were adopting the statements in their papers as their statements. Vafai stated at the hearing that she was afraid for her life and did not feel safe because Weissman had a gun, was angry, and harassed her. The trial court granted Vafai's request and issued a domestic violence restraining order (Order) restraining Weissman for a period of five years from doing the following things to Vafai: harassing, threatening, disturbing the peace, or contacting her by telephone, mail, or e-mail. The Order also ordered him to stay at least 100 yards away from her, her home, her vehicle, and her workplace. The Order also ordered him not to possess any firearms. Weissman timely filed a notice of appeal.

DISCUSSION

I

*DVPA Generally*

The purposes of the DVPA are "to prevent the recurrence of acts of violence and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (§ 6220.) Section 6300 of the DVPA provides:

> "An order may be issued under this part, with or without notice, to restrain any person for the purpose of preventing a recurrence of

5

domestic violence and ensuring a period of separation of the persons involved, if an affidavit or, if necessary, an affidavit and any additional information provided to the court pursuant to Section 6306, shows, to the satisfaction of the court, reasonable proof of a *past act or acts of abuse*."  (Italics added.)

Section 6203 defines "abuse" for purposes of the DVPA as conduct described in any of the following four categories: "(a) Intentionally or recklessly to cause or attempt to cause bodily injury[;] [¶] (b) Sexual assault[;] [¶] (c) To place a person in reasonable apprehension of imminent serious bodily injury to that person or to another[; or] [¶] (d) *To engage in any behavior that* has been or *could be enjoined pursuant to Section 6320*." (Italics added.)

Section 6320, subdivision (a), authorizes a court to issue ex parte restraining orders (i.e., temporary orders issued without notice and a hearing) as follows:

"The court may issue an ex parte order enjoining a party from molesting, attacking, striking, stalking, threatening, sexually assaulting,  battering, *harassing*, telephoning, including, but not limited to, making annoying telephone calls as described in Section 653m of the Penal Code, destroying personal property, *contacting*, either directly or indirectly, *by mail or otherwise*, coming within a specified distance of*, or disturbing the peace of the other party*, and, in the discretion of the court, on a showing of good cause, of other named family or household members."  (Italics added.)

Therefore, a DVPA order can be issued by a trial court if it finds reasonable proof of past behavior by the respondent as described in section 6320 (e.g., harassing, contacting, or disturbing the peace of the petitioner).  (Cf. *S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1265-1266 [respondent's "badgering" of petitioner during an argument in their home did not constitute "abuse" under the DVPA].)

6

A court may issue a permanent DVPA restraining (or protective) order after notice and a hearing. (§§ 6218, 6300, 6340.) The duration of a permanent order may be up to five years. (§ 6345.) In determining whether to issue a permanent DVPA order, "the court shall consider whether failure to make any of these orders may jeopardize the safety of the petitioner . . . ." (§ 6340, subd. (a).)

A trial court's grant or denial of a DVPA restraining order is, as with other injunctive relief, generally reviewed for abuse of discretion. (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420.) In determining whether a court has abused its discretion, we must first determine whether it "applied the correct legal standard to the issue in exercising its discretion, which is a question of law for this court." (*Id.* at pp. 420-421.) Accordingly, we review de novo, or independently, a trial court's interpretation of a statute. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.) If an issue involves a mixed question of fact and law, we apply the de novo standard of review if the issue is predominantly legal and the substantial evidence standard of review if the issue is predominantly factual. (*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888.)

II

*The Order*

Weissman contends the trial court erred by issuing the Order because the evidence was insufficient to support a finding he disturbed the peace of Vafai within the meaning of section 6320. His argument presumes the court based the Order solely on a finding he

7

had disturbed the peace of Vafai and did not find he had harassed Vafai. As we explain below, we disagree with that premise and conclude there is substantial evidence to support the court's finding that Weissman harassed Vafai.

A

At the March 25, 2013, hearing, the trial court paraphrased section 6320, stating that it could issue restraining orders based on threatening, harassing, telephoning, contacting directly or indirectly, or disturbing the peace. It stated therefore that "it doesn't take a threat of violence, just disturbing the peace of the other party is a sufficient basis for the court to issue the domestic violence restraining order." The court informed Weissman that he could not collect the money he believed Vafai owed him "by harassing [her] and that seemed to be the gravamen . . . of what is happening here." Vafai asserted Weissman had harassed her and she feared for her life. In particular, she cited his recent e-mails to her that wished her to be beheaded and wished her children harm and his coming to her apartment unannounced. She argued that his threat to put a gun to his head was also a danger to her. The trial court stated:

> "[W]hen I look at her exhibit 1A [the January 31, 2013, e-mail], . . .
> it's fairly clear that you're engaging in harassing language. And
> really, you haven't adequately explained to me a justification for
> using the language you did. . . . [¶] . . . [Y]ou [Weissman] don't deny
> in your declaration that you promised to not contact her [Vafai]
> [after the December 17, 2012 court hearing]."

Accordingly, the court granted Vafai's request and issued the Order.

8

Contrary to his assertion, we conclude the record shows the trial court relied primarily, if not solely, on a finding that Weissman had harassed Vafai within the meaning of section 6320. The court's reference to the "harassing language" in his January 31, 2013, e-mail referred to harassment within the meaning of section 6320. Therefore, we need not, and do not, address the merits of Weissman's assertion that the trial court erred because the language used in his January 31, 2013, e-mail does not constitute "disturbing the peace" within the meaning of section 6320.

Rather, we consider whether there is substantial evidence to support the trial court's finding that Weissman *harassed* Vafai within the meaning of section 6320. In determining whether a trial court erred in making findings on disputed factual questions, we apply the substantial evidence standard of review. (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1053.) In so doing, we review the record, and draw reasonable inferences to support the judgment. (*Ibid.*) To be substantial, evidence must be reasonable in nature, credible, and of solid value. (*DiMartino v. City of Orinda* (2000) 80 Cal.App.4th 329, 336; *Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.) The testimony of a single witness may constitute substantial evidence. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.) On appeal, we do not evaluate the credibility of the witnesses or reweigh the evidence regardless of whether the issues were tried on affidavits or live testimony, and defer to the trial court's findings if supported by substantial evidence. (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968; *Bolkiah v. Superior Court*

9

(1999) 74 Cal.App.4th 984, 1000; *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.)

Although the term "harassing" is not defined in section 6320 or elsewhere in the DVPA, we conclude the evidence submitted by the parties, construed favorably to support the Order, shows Weissman harassed Vafai within the meaning of the DVPA. Although we do not decide that section 6320's use of the term "harassing" is equivalent to the term "harassment" as used in Code of Civil Procedure section 527.6 (the civil harassment restraining order statute), we nevertheless believe that latter statute's definition is instructive. Code of Civil Procedure section 527.6 defines "harassment" as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (Code Civ. Proc., § 527.6, subd. (b)(3).) Under that standard, "harassment" exists if a person annoys or harasses another person and the course of conduct would cause a reasonable person substantial emotional distress and actually causes the other person substantial emotional distress. Based on the record in this case, we conclude the trial court could have reasonably found Weissman did engage in conduct that annoyed or harassed Vafai and caused her substantial emotional distress, and that would have caused a reasonable person substantial emotional distress. Weissman sent Vafai many inflammatory, disturbing, and/or threatening e-mails

10

after their dating relationship ended. He also contacted her by telephone and went to her home. Importantly, during one visit to her apartment, Weissman demanded the return of a television he had given to Vafai and then threw it at her as he left. During previous incidents as discussed above, Weissman had also thrown a knife at her and told her he had put a gun to his head. The trial court could have reasonably found that all of the foregoing conduct caused Vafai substantial emotional distress and would have caused a reasonable person substantial emotional distress. Therefore, had the civil harassment statutory standard been applicable in this case, there would have been substantial evidence to support a finding by the trial court that Weissman harassed Vafai.

We believe the statutory standard for harassment under Code of Civil Procedure section 527.6 is as stringent as, if not more stringent than, section 6320's standard for "harassing" under the DVPA. Accordingly, if there is sufficient evidence to support a finding of harassment under the civil harassment standard discussed above, there necessarily must be sufficient evidence to support a finding of harassment under section 6320 of the DVPA.

To the extent Weissman asserts section 6320 harassment requires that the protected person be placed in reasonable apprehension of future physical abuse and/or immediate and present danger of physical abuse, neither section 6320's language nor the cases he cites support that assertion. (See, e.g., *Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1283-1292 [regarding requirements for renewal of DVPA restraining order].) Rather, we conclude the evidence in the record, construed favorably to Vafai and

11

to support the Order, supports the trial court's finding that Weissman harassed Vafai within the meaning of section 6320.  Likewise, Weissman does not persuade us that issuance of the Order in the circumstances of this case would be inequitable to him.  In any event, he does not cite any case holding that issues of equity are relevant to application of the statutory requirements for issuance of a DVPA restraining order.  We conclude the court did not abuse its discretion by granting Vafai's request and issuing the Order.

## DISPOSITION

The order is affirmed.  Vafai is entitled to costs on appeal.

McDONALD, Acting P. J.

WE CONCUR:

McINTYRE, J.

AARON, J.

12